UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.:16-cv-20501-FAM

RUBEN A. SEBASTIAN,

Plaintiff,

v.

THE CITY OF MIAMI, a municipality,
RODOLFO LLANES, individually and in his official capacity
as the chief of the City of Miami Police Department, and
LIEUTENANT JAVIER ORTIZ, in his individual capacity
as an officer with the City of Miami Police Department,
JAY GROSSMAN, in his individual capacity as an officer
with the City of Miami Police Department,
DANIEL CROCKER, in his individual capacity as an officer
with the City of Miami Police Department, and
JOHN DOE, in his individual capacity as an officer
with the City of Miami Police Department, whose identity
is presently unknown to Plaintiff,

Defendants.

_____ /

**FIRST AMENDED COMPLAINT**

David A. Frankel, Esq.
**Law Offices of David A. Frankel, P.A.**
20 South East 20th Street
Fort Lauderdale. Florida 33315
(954) 683-0300
Fla. Bar Number 741779
david@BlueLotusLaw.com
Service@BlueLotusLaw.com

*Attorney for Ruben Sebastian*

Plaintiff, RUBEN A. SEBASTIAN, sues Defendants, CITY OF MIAMI, RODOLFO LLANES, JAVIER ORTIZ, JAY GROSSMAN, DANIEL CROCKER, and JOHN DOE for damages, jointly and severally, demands trial by jury, and alleges:

## NATURE OF THE ACTION

1.       This is an action for damages arising from an unlawful search, arrest, use of force intended to cause injury and emotional distress, and a cover-up by City of Miami Police Officers that occurred on July 7, 2015 after Plaintiff, RUBEN SEBASTIAN, was stopped in his vehicle for speeding along a roadway. This action alleges violations of federal civil rights laws, 42 U.S.C. §1983, and the laws of the State of Florida. The Plaintiff seeks in excess of $75,000 exclusive of interest and costs.

## JURISDICTION AND VENUE

2.       This action is brought pursuant to 42 U.S.C. §§1983 and 1988, the First, Fourth, and Fourteenth Amendments to the United States Constitution, and the tort laws of Florida. Jurisdiction is founded on 28 U.S.C. §§1331, 1343, 42 U.S.C. §1988, and under the tort law of Florida. Supplemental jurisdiction, and joinder of parties for additional state law claims, is proper pursuant to 28 U.S.C. §1367(a) because they form part of the same case or controversy. Plaintiffs assert multiple state tort law claims.

3.       Under 28 U.S.C. § 1391(b)(2), venue lies in the United States District Court for the Southern District of Florida, Miami Division, because it is the judicial district and division in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

4.      The Plaintiff RUBEN A. SEBASTIAN (herein referred to as Plaintiff or SEBASTIAN"), at all times material hereto, has been a resident of Miami-Dade County, Florida, over the age of eighteen years and otherwise able to sue in his own capacity.

5.      Defendant City of Miami ("Defendant CITY") is a political subdivision of the State of Florida, a Florida municipal corporation, and at all relevant times had ultimate authority over the City of Miami Police Department and the other defendants. The Defendant CITY was responsible for the hiring, retention, training, supervision, discipline, and conduct of the individual defendants, as all of them were employed by the City of Miami Police Department at all relevant times.

6.      Defendant RODOLFO LLANES ("Defendant LLANES") is the Chief of the City of Miami Police Department. At all times material hereto LLANES was responsible for adopting and implementing rules and regulations for all City of Miami police officers, and ensuring compliance with those rules and regulations. LLANES was responsible for the training and supervision of City of Miami police officers, and for initiating corrective action for violations of the rules and regulations.

7.      Defendant JAVIER ORTIZ ("Defendant ORTIZ"), Badge # 5418, is a duly appointed law enforcement officer of the City of Miami Police Department, at all times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the City of Miami Police Department, and/or the State of Florida. Defendant ORTIZ is being sued in his individual capacity.

8.      Defendant JAY GROSSMAN ("Defendant GROSSMAN"), Badge # 2559, is a duly appointed law enforcement officer of the City of Miami Police Department, at all

times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the City of Miami Police Department, and/or the State of Florida. Defendant GROSSMAN is being sued in his individual capacity.

9.     Defendant DANIEL CROCKER ("Defendant CROCKER"), Badge # 1246, is a duly appointed law enforcement officer of the City of Miami Police Department, at all times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the City of Miami Police Department, and/or the State of Florida. Defendant CROCKER is being sued in his individual capacity.

10.     Defendant JOHN DOE ("DOE"), whose identity is currently unknown to Plaintiff, is believed to be a duly appointed law enforcement officer of the City of Miami Police Department, at all times material hereto acting under color of law, to wit: under the color of statutes, ordinances, regulations, policies, practices, customs and usages of the City of Miami Police Department, and/or the State of Florida. Defendant JOHN DOE is being sued in his individual capacity. Plaintiff believes that this Defendant's identity will be positively determined during the course of discovery.

## GENERAL ALLEGATIONS

### A.  The Initial Traffic Stop and Request to Search

11.     On or about July 7, 2015 Plaintiff SEBASTIAN was driving a Chevrolet HHR station wagon along Rickenbacker Causeway within the City of Miami, when he was directed to pull his vehicle to the side of the road by Defendant GROSSMAN for a traffic related investigation. At the time GROSSMAN was acting under the color of law while

engaged in his discretionary duties as a law enforcement officer for the City of Miami.

12.     The vehicle Plaintiff SEBASTIAN was driving was his own vehicle, however at the time he was employed and operating as a delivery person for Unloath Corp., a grocery delivery service. The vehicle was clearly marked and identifiable with the insignia of the Unloath Corp. delivery service affixed by a magnetic signage.

13.     Defendant GROSSMAN approached SEBASTIAN'S driver's window and stated to SEBASTIAN, who remained seated in the vehicle, that he believed SEBASTIAN had exceeded the speed limit. In addition, Defendant Grossman requested to check the window tinting on the front windows of the vehicle to determine whether they were in compliance with Florida law. SEBASTIAN complied with the request.

14.     Defendant GROSSMAN then also stated that he wished to search the rear compartment of the vehicle. When SEABASTIAN asked for what purpose, Defendant GROSSMAN claimed that because of the window tinting on the rear windows he could not see inside the rear compartment of the vehicle. At the time of this encounter, the front windows in SEBASTIAN'S vehicle were rolled down, rendering the interior of the vehicle, including the rear compartment, easily visible to any normal sighted person. Based on information and belief, the reason given by Defendant GROSSMAN was a pretext intended to create the existence of a lawful basis to conduct a warrantless search where no such basis did in fact exist.

15.     At the time, Defendant GROSSMAN was not presented with any conditions or circumstances from which any reasonable person would conclude that there existed any degree of suspicion that his safety or that of any other person was threatened or in any jeopardy of harm. Moreover, SEBASTIAN said no word, nor acted in any fashion that

might cause Defendant GROSSMAN to fear for his safety. To the contrary, SEBASTIAN was cooperative in assisting Defendant GROSSMAN with the investigation of the traffic infraction.

16.     From the position where GROSSMAN was standing outside the driver's door, any reasonably sighted person could see into the rear portion of the vehicle clearly enough to exclude the presence of any other person, or circumstances, that might give rise to any fear for his safety.

17.     Defendant GROSSMAN'S reason(s) for determining to search the vehicle is/are unknown to SEBASTIAN. However, any claim then, or now, that a search of the vehicle was necessary for "officer safety," or that he had any articulable suspicion of criminal activity, was/is false.

18.     There existed no level of suspicion, probable cause, or arguable probable cause, to conduct a warrantless search of the vehicle. As such Defendant GROSSMAN'S decision to conduct a warrantless search of SEBASTIAN'S vehicle was objectively unreasonable and in violation of SEBASTIAN'S constitutionally protected right against unreasonable searches guaranteed to him by the United States Constitution.

19.     When SEBASTIAN refused to allow the unlawful search Defendant GROSSMAN summoned Defendant ORTIZ, who held the rank of lieutenant. While not prevented by City of Miami Police policy or procedure from responding to assist GROSSMAN with a roadside traffic stop, based on information and belief it was not customary for any officer of ORTIZ's rank and particular assignment with the City of Miami Police Department at the time to respond to a roadside stop. Based on information and belief, GROSSMAN requested the presence of ORTIZ, and/or ORTIZ responded, because he is generally known

to have a history of violating the rights of citizens and CITY policy and procedure.

20.     While waiting for Defendant ORTIZ to arrive Defendant GROSSMAN detained SEBASTIAN for a period of time greater than was necessary to investigate a traffic infraction and issue a citation. Consequently, GROSSMAN'S detention of SEBASTIAN during this period of time was illegal and constituted false imprisonment.

### B.     Defendant ORTIZ's Arrival at the Roadside Stop

21.     Upon arriving at the scene of the stop Defendant ORTIZ also wrongfully demanded to conduct a warrantless search of the vehicle. At the time he did so, Defendant ORTIZ possessed no greater knowledge of facts or circumstances other than those known to Defendant GROSSMAN as set forth above.

22.     Alternatively, any additional information, inference, circumstance and/or assumption that may have reasonably been known to Defendant ORTIZ at the time he approached the vehicle with SEBASTIAN still seated inside (obtained from Defendant GROSSMAN or any other source) that would suggest any exigency, suspicion or cause to conduct a warrantless search, was in fact dispelled, or should have been dispelled, by the apparent and existing circumstances. Any competent law enforcement officer could independently determine that there existed no threat to officer safety, probable cause to conduct a search, or suspicion of criminal activity.

23.     Plaintiff SEBASTIAN said no word, or did any act, in the presence of Defendant ORTIZ that would create any reasonable belief or suspicion that any threat to safety existed, or that a crime was afoot. To the contrary, Plaintiff was equally cooperative and forthcoming with any information requested by Defendant ORTIZ as he was with Defendant GROSSMAN. The rear compartment of the vehicle was as visible and

unobstructed in the presence of Defendant ORTIZ as it was at the time Defendant GROSSMAN claimed he could not see into the back.

24.     After SEBASTIAN again lawfully refused to submit to an unreasonable and warrantless search Defendant ORTIZ became enraged and forcibly opened the car door and extracted SEBASTIAN from the driver's seat. At or about this time Defendant DOE had arrived and was present.

25.     Upon being removed from his vehicle SEBASTIAN was forcibly restrained by Defendants ORTIZ and/or DOE who violently pressed SEBASTIAN'S face down on the hood of a police vehicle and placed him in metal handcuffs. Defendants ORTIZ and/or DOE placed the handcuffs on SEBASTIAN in a manner purposely intended to cause pain and injury, cutting off the circulation in his hands, and cutting into the skin on his wrists. When SEBASTAIN protested, DOE or ORTIZ remarked derisively that if SEBATIAN continued to complain about how tight the cuffs were "he knew of a way to make them tighter."

26.     While being bent over the hood of the police vehicle and in obvious pain SEBASTIAN continued to object to the search of his vehicle, stating to Defendant ORTIZ and Defendant GROSSMAN that a warrant was required before they could conduct a search. Defendants ORTIZ and/or GROSSMAN responded to these statements of protest by mocking SEBASTIAN, asking him if he was a "YouTube Lawyer," and "constitutionalist." Defendants ORTIZ and/or GROSSMAN stated in an imperious and high-handed manner they "didn't need a warrant," before they both entered the vehicle and began to search.

        **C.      The Search**

27.     As they began the search – removing groceries from the rear of the vehicle and tossing them on the ground – Defendants ORTIZ and/or GROSSMAN asked SEBASTIAN whether there were any weapons in the vehicle. SEBASTIAN advised that there was a firearm inside the car. When asked whether he had a permit to carry a firearm SEBASTIAN indicated that he did, and that the permit was plainly obvious as it was hanging from the rearview mirror and was observable to the officers throughout the encounter.

28.     Plaintiff SEBASTIAN was at the time employed full-time as a security guard by Miami-Dade Transit in its Metro Rail system, and at all times material hereto was licensed and permitted to possess and carry a firearm. SEBASTIAN stated to Defendant GROSSMAN initially at the time of the stop that he worked as an armed guard for Miami-Dade County because he was due at his post in approximately an hour to an hour and a half.

29.     Upon being advised that there was a firearm inside the vehicle Defendant ORTIZ reentered and began to look inside. Unable to locate the firearm he asked SEBASTIAN where it was. SEBASTIAN advised that it was located inside the driver's door side pocket. The firearm was then located in its holster in the side pocket.

30.     Upon retrieving the firearm Defendants ORTIZ and/or GROSSMAN then stated to SEBASTIAN that he would not that day, or ever, return to his job with Miami-Dade County. Defendant ORTIZ then determined to falsely arrest SEBASTIAN for the offense of reckless display of a firearm - this being the firearm ORTIZ was unable to locate without the assistance of SEBASTIAN telling him where it was located.

31.     Based on information and belief the statements of ORTIZ and GROSSMAN were intended to mean that although the firearm was properly permitted and safely secured

inside the vehicle, such that SEBASTIAN had committed no weapons related offense, ORTIZ and/or GROSSMAN intended to proffer and institute false criminal charges against SEBASTIAN so that he would be fired from his job.

### D. Placing SEBASTIAN in an Unventilated Police Car

32.     In furtherance of the illegal arrest ORTIZ directed that Defendant CROCKER, who had arrived at the scene, place SEBASTIAN in his police vehicle for transportation to the police station. Defendant DOE and/or ORTIZ then removed the metal handcuffs from SEBASTIAN'S wrists and replaced them with plastic "flexi-cuffs," again intentionally tightening the cuffs in a manner purposely and wantonly intended to cause pain and further injury. Defendant DOE and/or ORTIZ then placed SEBASTIAN into the rear seat of CROCKER's vehicle, placing him in a position and manner that increased the pain caused by the over tightened flex-cuffs.

33.     Once SEBASTIAN was placed inside the police vehicle Defendant CROCKER, either on his own volition, and/or at the instruction of ORTIZ, then raised all the windows leaving SEBASTIAN inside. This took place in the presence of the other Defendant officers, who tacitly, or actively, agreed with CROCKER'S action. The Defendants then purposely left SEBASTIAN inside the police vehicle without sufficient ventilation to allow him to breathe normally. As the temperature inside the police vehicle began to rise in the summer heat SEBASTIAN became unable to breathe and began begging the Defendants to open the door or window. Seeing that SEBASTIAN was becoming overwhelmed by lack of air and heat Defendant CROCKER conceded by rolling a rear window down one to two inches, but refused SEBASTIAN'S plea that the windows be rolled down further. SEBASTIAN also begged to have the flexi-cuffs loosened as they were so tight he began

to lose feeling in his hands. The Defendants refused.

34.     During the time he remained in the police vehicle the temperature remained at a dangerously high level and SEBASTIAN suffered heat exhaustion, delirium and extreme emotional distress.

35.     At all times that SEBASTIAN was forced to remain inside the car, Defendants ORTIZ, GROSSMAN, DOE and CROCKER were present near the vehicle and looking at SEBASTIAN inside as he begged for relief.

36.     Plaintiff SEBASTIAN requested directly of all four Defendants that the windows of the vehicle be rolled down so that he would be able to breathe normally. Despite the obvious nature of Plaintiff's distress each Defendant refused to discontinue the torture.

37.     Despite the fact that the continued search of the vehicle revealed no contraband and there was no probable cause for an arrest SEBASTIAN was transported to the police station. His car was towed away.

38.     The Defendants lodged three criminal charges against SEBASTIAN: Resisting or Obstructing an Officer Without Violence (two counts), and Reckless Display of a Firearm. These charges were false and as there was no arguable probable cause to support them. The decision to arrest SEBASTIAN on any criminal charge was objectively unreasonable, and the result of plain incompetence and/or deliberate indifference to SEBASTIAN'S constitutional rights.

39.     SEBASTIAN remained falsely imprisoned at the City of Miami Police Department for over five (5) hours, handcuffed behind his back, until he was given a Notice To Appear in court and released.

40.     On or about August 14, 2015 the prosecuting authority for Miami-Dade County

abandoned all criminal charges against SEBASTIAN based on the falsity of the charges and/or the failure of the Defendants to cooperate with the prosecution, as well as Defendants GROSSMAN and ORTIZ'S request that the state not pursue criminal charges in the matter.

41.　　In particular, it is claimed by Plaintiff that ORTIZ'S and GROSSMAN'S actions were taken in retaliation against SEBASTIAN because he asserted his constitutional right to refuse a warrantless and unjustified search of the vehicle he was driving.

42.　　ORTIZ and GROSSMAN were bound to operate within the law and seek a search warrant based on probable cause, if it did exist, or otherwise refrain from any search of the vehicle in the absence of any exigent circumstances.

43.　　As a direct and proximate result of the joint actions of ORTIZ and GROSSMAN in falsely arresting SEBASTIAN, his employment with Miami-Dade County was terminated. Moreover, as a direct and proximate result of these Defendants' unlawful actions SEBASTIAN has been unable to find employment as an armed security guard for any employer, or suitable employment commensurate with his chosen line of work. As a result, SEBASTIAN has suffered both reputational and economic harm. Despite continued application, SEBASTIAN has been denied reemployment with Miami-Dade County, or any contractor because of the arrest.

44.　　Plaintiff SEBASTAIN continues to suffer nerve damage to his hands and wrists, emotional pain and suffering, loss of employment, and reputational damages proximately caused by the actions of the Defendants.

### E.　　Defendant ORTIZ's History of Misconduct

45.　　During the course of Defendant ORTIZ'S employment with the City of Miami, the Defendant CITY and Defendant LLANES became aware, or should have become aware,

of information indicating Defendant ORTIZ's inability and/or unwillingness to follow orders and departmental policies, and unfitness to serve in a capacity where violations of citizen's rights could occur, including but not limited to: illegal searches and seizures, theft of property, excessive force and/or retaliation against citizen's who assert their constitutional rights.

46.     Prior to July 7, 2015, Defendant ORTIZ had been:

a. the subject of twenty-three or more citizen complaints filed with the Defendant CITY since joining the police force in March 2004;

b. investigated by the Defendant CITY's Internal Affairs division for using excessive force, and failure to comply with CITY rules and regulations;

c. investigated for using excessive force by the Civilian Investigative Panel of the City of Miami ("CIP"), a civilian oversight agency that monitors City of Miami Police Department practices and investigates claims of City of Miami police officer misconduct; and

d. placed on a "Monitoring List" maintained by the CIP for City of Miami Police officers, which lists officers who demonstrate a pattern of misconduct.

47.     As a direct and proximate result of the acts of the Defendants CITY, LLANES, ORTIZ, GROSSMAN, DOE and/or CROCKER Plaintiff SEBASTAIN suffered damages, including the following:

a. injuries to his hand and wrists, causing severe pain and suffering and emotional distress;

b. harm to reputation and loss of employment as a result of the false arrest and malicious prosecution;

c. financial damage caused by the loss of his employment, and for having to retain counsel to defend him in connection with a false arrest and malicious prosecution;

48.     The Defendants are subject to punitive damages for their conduct.

49.     Plaintiff SEBASTIAN is obligated to pay undersigned counsel a reasonable fee for their services in the event of recovery.

# FEDERAL CLAIMS

## <u>COUNT I</u>
### Illegal Search of Vehicle – Fourth Amendment - 42 U.S.C. §1983
### Defendants ORTIZ and GROSSMAN

50.     Plaintiff hereby incorporates paragraphs 1 -29, 37, 39-42, and 44-49, as if specifically pled herein.

51.     At no time did there exist probable cause to conduct an interior search of SEBASTIAN'S vehicle. There existed no threat, or apparent threat to officer safety prior to SEBASTIAN'S arrest. Nor did there exist any reasonable suspicion of criminal activity. Plaintiff's arrest was false and unsupported by probable cause or arguable probable cause to support a search incident to arrest.

52.     Any claim by ORTIZ and/or GROSSMAN that the tinting on the windows of the vehicle obstructed their view into the rear compartment is belied by the obvious ability of any reasonably sighted person to look behind the driver through either of the rolled down front seat windows into the rear area.

53.     These Defendants determined to search the vehicle without having any reasonable articulable suspicion of criminal activity. Moreover, any search conducted at or after the time of arrest, purported to be incident to arrest, was illegal in that the detention and arrest were themselves illegal. In fact, it is apparent that SEBASTIAN'S arrest was simply a ruse so the Defendants could search the vehicle, to "teach SEBASTIAN a lesson" for asserting his constitutional rights, and/or for their own personal satisfaction.

54.     As a direct and proximate result of the illegal search of SEBASTIAN'S vehicle by ORTIZ and/or GROSSMAN he suffered loss of income, humiliation, physical and emotional damage, and damage to property.

     **WHEREFORE** Plaintiff SEBASTIAN seeks entry of this Court's order of final

judgment against Defendants GROSSMAN and ORTIZ, jointly and severally for compensatory as well as punitive damages, attorney's fees, costs, and such other relief that the Court deems just and proper.

<div align="center">

**COUNT II**
**False Imprisonment/Arrest – Fourth Amendment - 42 U.S.C. §1983**
**(Defendants ORTIZ and GROSSMAN)**

</div>

55.     Plaintiff hereby incorporates paragraphs 1 - 49 as if specifically pled herein.

56.     At all times material hereto the detention and/or imprisonment of SEBASTIAN by Defendants ORTIZ and/or GROSSMAN was objectively unreasonable, violated a clearly established constitutional right, and was the result of plain incompetence and/or deliberate indifference to SEBASTIAN'S rights.

57.     More specifically, the actions of the Defendants in detaining SEBASTIAN beyond the scope and time necessary to conduct a traffic-related investigation as described above, removing him by force from his car, and/or effecting his arrest and imprisonment in the absence of a warrant and probable cause were unlawful.

58.     As a direct and proximate result of the illegal detention and false imprisonment of SEBASTIAN by ORTIZ and/or GROSSMAN he suffered financial loss, reputational damage resulting in loss of future earning capacity, and physical and emotional harm.

    **WHEREFORE** Plaintiff SEBASTIAN seeks entry of this Court's order of final judgment against Defendants GROSSMAN and ORTIZ, jointly and severally for compensatory and punitive damages, attorney's fees, costs, and such other relief that the Court deems just and proper.

<div align="center">

**COUNT III**
**Malicious Prosecution - 42 U.S.C. §1983**
**(Defendants ORTIZ and GROSSMAN)**

</div>

59.     Plaintiff hereby incorporates paragraphs 1 – 30, 36 – 40, and 44 – 49, as if specifically pled herein.

60.     As a direct and proximate of the actions of the Defendant ORTIZ and GROSSMAN a criminal case was initiated in Miami-Dade County criminal court (number M-15-024049) on July 20, 2015 against SEBASTIAN.

61.     The case was terminated in his favor on or about August 14, 2015.

62.     The actions of Defendants ORTIZ and GROSSMAN in instituting criminal process against Plaintiff SEBASTIAN, were without any legal justification and were not the lawful execution of their discretionary duties as police officers.

63.     As a direct and proximate cause of the commencement of the prosecution SEBASTIAN suffered financial loss in the form of lawyer's fee, bail and other costs, loss of freedom by incarceration, physical injury embarrassment and indignity, humiliation and/or emotional injury leading to interference with his enjoyment of life, and financial damage and loss of future earning capacity.

     **WHEREFORE**, the Plaintiff RUBEN SEBASTIAN requests this Court enter judgment against Defendants ORTIZ and GROSSMAN, and award the Plaintiff compensatory and punitive damages, attorney's fees and costs, as well as all other further relief this Court deems just and proper.

<div align="center">

**COUNT IV**
**Excessive Use of Force – Fourth Amendment - 42 U.S.C. §1983**
**(Defendants ORTIZ and JOHN DOE)**

</div>

64.     Plaintiff hereby incorporates paragraphs 1 - 49 as if specifically pled herein.

65.     Plaintiff SEBASTIAN was physically restrained and taken into formal custody by ORTIZ and/or DOE.

66.     Defendant ORTIZ and/or DOE then handcuffed SEBASTIAN behind his back, using the cuffs as a weapon or devise purposely in a manner specifically intended to cause significant pain and discomfort.

67.     By doing so ORTIZ and/or DOE caused constriction of the blood circulation, as well as nerve damage, in one or both of SEBASTIAN'S hands and/or upper extremities resulting in temporary and permanent loss of sensation.

68.     At no time during the events giving rise to this action did SEBASTIAN commit any act, motion or gesture to oppose any member of the Miami Police Department, any police officer, or any other person, that might reasonably have been interpreted or perceived as a threat to their safety, health or well-being.

69.     At the time ORTIZ and/or DOE placed SEBASTIAN in handcuffs, they together, or individually knew, or should have known that there existed no probable cause to arrest SEBASTIAN. The extent of force used by DOE to restrain SEBASTIAN was excessive and objectively unreasonable, and/or done with malicious intent.

70.     SEBASTIAN repeatedly requested of the Defendants ORTIZ, GROSSMAN, CROCKER and/or DOE that the handcuffs be loosened, however each request was either ignored or refused.

71.     Several hours later, at the City of Miami Police Department, a separate processing officer examined the injury being caused by the handcuffs and loosened them.

72.     As a direct and proximate result of the force used by ORTIZ and/or DOE in restraining SEBASTIAN, SEBASTIAN suffered extreme pain and suffering, as well as

temporary and/or permanent physical injury.

WHEREFORE Plaintiff SEBASTIAN seeks entry of this Court's order of final judgment against Defendant ORTIZ and/or DOE for all compensatory and punative damages incurred, attorney's fees, costs, and such other relief that the Court deems just and proper.

<div align="center">

**COUNT V**
**First Amendment Retaliation - 42 U.S.C. § 1983**
**(Defendants ORTIZ and GROSSMAN)**

</div>

73.    Plaintiff hereby incorporates paragraphs 1 - 49 as if specifically pled herein.

74.    SEBASTIAN's repeated verbal objections to the search of his vehicle, in which he made reference to his constitutional rights, were an assertion of rights that constitute protected free speech, not "fighting words" under the First Amendment.

75.    As a consequence of SEBASTIAN's assertion of an objection to the search of his vehicle, Defendants ORTIZ and/or GROSSMAN mocked him as a a "YouTube lawyer" and "constitutionalist", and then proceeded to conduct an unlawful search of SEBASTIAN's vehicle anyway.

76.    To further retaliate against SEBASTIAN for the assertion of his constitutional rights, ORTIZ and/or GROSSMAN falsely arrested him and instituted criminal legal process - stating their malicious purpose, to cause him to loss his employment.

77.    Based on the facts and circumstances then apparent, and alleged herein, ORTIZ's and GROSSMAN's actions were intended to deter a person of ordinary firmness from exercising his First Amendment right to object to an unlawful police search and seizure.

78.    As a direct and proximate result of the actions of ORTIZ and/or GROSSMAN SEBASTIAN suffered loss of income, reputational damage resulting in loss of future

earning capacity, and physical and emotional harm.

**WHEREFORE** Plaintiff SEBASTIAN seeks entry of this Court's order of final judgment against Defendants GROSSMAN and ORTIZ, jointly and severally for all damages incurred - compensatory and punitive, attorney's fees, costs; and such other relief that the Court deems just and proper.

## COUNT VI
### Supervisory Liability - Directing Unlawful Acts - Fourth Amendment - 42 USC § 1983
### (Defendant ORTIZ)

79.     Plaintiff hereby incorporates paragraphs 1 - 49 as if specifically pled herein.

80.     Defendant ORTIZ directed unlawful acts by doing the following: (1) ordering SEBASTIAN's arrest and/or detention while Defendants conducted an unlawful search of SEBASTIAN's car without probable cause or arguable probable cause; (2) ordering that SEBASTIAN be arrested and handcuffed without probable cause or arguable probable cause.

81.     Defendant ORTIZ's direction of the detention and arrest of SEBASTIAN was the proximate cause of the deprivation of Plaintiff's Fourth Amendment right to be free from unlawful arrest and detention without probable cause and arguable probable cause.

82.     As a direct result of the Defendant's Order, Plaintiff suffered loss of income, reputational damage resulting in loss of future earning capacity, and physical and emotional harm.

**WHEREFORE** Plaintiff SEBASTIAN seeks entry of this Court's order of final judgment against Defendant ORTIZ for all damages compensatory and punitive, incurred, attorney's fees, costs, and such other relief that the Court deems just and proper.

## COUNT VII
### Supervisory Liability - Failure to Stop Unlawful Acts - Fourth Amendment - 42 USC § 1983
### (Defendant ORTIZ)

83.  Plaintiff hereby incorporates paragraphs 1 - 49 as if specifically pled herein.

84.  Defendant ORTIZ was present when Plaintiff's hands were being restrained too tightly in handcuffs in a manner deliberately intended to cause physical and emotional injury, and when Plaintiff was confined in Defendant CROCKER'S vehicle without ventilation under dangerous conditions.

85.  Defendant ORTIZ heard Plaintiff's repeated requests for a loosening of the handcuffs, but ignored these requests and did not direct that the handcuffs be loosened by other Defendants present. Additionally, ORTIZ was aware of Plaintiff's physical and emotional distress as he became overwhelmed by intense heat and a lack of ability to breath in a regular manner when confined in CROCKER'S vehicle as the Plaintiff made a specific plea for help to ORTIZ, who refused to intervene.

86.  Defendant ORTIZ's failure to stop the continued use of excessively tight restraints on SEBASTIAN, and/or his failure to intervene to alleviate the intentionally injurious manner in which SEBASTIAN was confined in a police vehicle, proximately caused the deprivation of Plaintiff's Fourth Amendment right to be free of use of excessive force and deprivation of rights.

87.  As a direct result of the Defendant's inaction, Plaintiff suffered physical and emotional harm.

**WHEREFORE** Plaintiff SEBASTIAN seeks entry of this Court's order of final

judgment against Defendant ORTIZ for all compensatory and punitive damages incurred, attorney's fees, costs, and such other relief that the Court deems just and proper.

## COUNT VIII
### Policy of Failing to Investigate/Discipline – 42 U.S.C.§1983
### (Defendant City of Miami)

88.     Plaintiff SEBASTIAN re-alleges paragraphs 1 through 49 above, and incorporates them into this Count.

89.     Given the position of authority of City of Miami police officers, which permits them to, among other things, conduct traffic stops of citizen motorists, conduct searches of property, including vehicles, effectuate arrests, exercise control of the persons arrested, the Defendant CITY had a legal duty to:

> a.      thoroughly and impartially investigate allegations of misconduct against police officers;
>
> b.      appropriately discipline police officers who are unable or unwilling to respect the constitutional rights of individuals or who violate constitutional rights, law and/or department policy, including termination for repeat violators; and
>
> c.      prevent police officers who are unable or unwilling to respect the constitutional rights of individuals, laws and rules and regulations, from performing tasks related to traffic stops and/or searches of vehicles stopped on the roadway for suspected traffic violations.

90.     At all times material hereto, the Defendant CITY, through the Internal Affairs division of its police department, had an unwritten custom, policy or practice of failing to properly and impartially investigate allegations of misconduct against, and/or to administer appropriate discipline to, offending police officers.

91.     It was the unwritten custom or policy of the Defendant CITY to accept a police

officer's version of events surrounding an allegation of misconduct, and/or to make disciplinary decisions based on factors other than an objective and impartial assessment of the facts underlying allegations of misconduct, and/or to allow police officers with a history of complaints of excessive force, unlawful arrests, and other violation of laws, rules or regulations to continue to serve in positions where the such were likely.

92.     The Defendant CITY's unwritten policy, practice or custom of failing to impartially investigate allegations of police misconduct, and failing to discipline, train and/or supervise officers involved in such conduct is the direct cause of such violations as it has created an atmosphere where officers can violate rights without fear of supervision or discipline.

93.     Prior to July 7, 2015, the Defendant CITY had become aware of numerous complaints and allegations of misconduct initiated by citizens and other agencies against the Defendant ORTIZ. These complaints were investigated and reviewed by the City of Miami Police Department's Internal Affairs division and the City of Miami Citizen's Investigative Panel, of which the City of Miami has an active role.

94.     Despite a clear and obvious pattern of violations of rules and regulations resulting in abuse of citizens' rights by ORTIZ, the Defendant CITY remained deliberately indifferent, and continued to conduct non-objective investigations resulting in findings intended to circumvent or avoid its responsibility to discipline, reprimand or remediate ORTIZ'S unlawful behavior.

95.     Based on the numerous and multitude of allegations of misconduct against Defendant ORTIZ, and his placement on a watch-list by the Citizen's Investigative Panel, the Defendant CITY knew, or should have known, that its failure to conduct objective investigations or otherwise take action to discipline, reprimand or to effectively remediate

his behavior, continued violations against the public by ORTIZ were a certainty.

96.    The Defendant CITY'S knowing indifference to the certainty of continued failure to adhere to its rules and regulations was the direct and proximate cause of the wrongful acts of Defendant ORTIZ on July 7, 2015, and was itself a deprivation of Plaintiff SEBASTIAN'S rights.

97.    As a direct and proximate result of Defendant CITY'S deprivation of SEBASTIAN'S rights he suffered physical, emotional, financial and reputational injury.

    **WHEREFORE**, Plaintiff demands judgment against Defendant CITY for compensatory damages, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems appropriate.

<div align="center">

**COUNT IX**
**Deprivation of Rights- Violation of 42 U.S.C. §1983**
**(Defendant RODOLFO LLANES in his individual capacity as Chief of Police )**

</div>

98.    Plaintiff SEBASTIAN incorporates paragraphs 1- 49 above as if specifically set forth herein.

99.    At all times material hereto, Defendant LLANES was charged with the plenary responsibilities to adopt and implement policies, practices, and procedures intended to ensure the protection of rights of the public by identifying City of Miami police officers who demonstrate an unwillingness or inability to obey City of Miami Police Department rules and regulations which may result in violations of constitutional and legal rights.

100.    As such Defendant LLANES owed a legal duty to the Plaintiff SEBASTIAN to take all lawful measures within his power as the City of Miami Chief of Police to protect him from a deprivation of rights by exercising reasonable care to identify, supervise, train and/or eliminate officers who continually cause such abuses.

101.    At all times material hereto it was apparent that Defendant ORTIZ was engaged in a wide spread pattern of violation of citizens' rights, including but limited to those materially similar to the violations ORTIZ committed against Plaintiff SEBASTIAN.

102.    Through a multitude of citizen complaints and investigations conducted by the City of Miami Police Internal Affairs division and the Citizen's Investigative Panel Defendant LLANES knew, or should have known, that ORTIZ had engaged in a pattern of violations of City of Miami rules and regulations, and that there was a certainty that ORTIZ would continue to engage in such violations leading the abuse of citizens' rights in the future.

103.    Despite this knowledge, or being reasonably charged with this knowledge, LLANES failed to act to prevent the foreseeable abuses by ORTIZ. As such, at all times material hereto, Defendant LLANES has remained deliberately indifferent to the reasonable certainty that Defendant ORTIZ would avail himself of the opportunity to violate Plaintiff SEBASTIAN'S rights as described herein.

104.    Defendant LLANES' deliberate indifference to the abuses by ORTIZ that occurred prior to July 7, 2015 is the direct and proximate cause of the injuries to Plaintiff SEBASTIAN because acceptance and reasonable action with regard to the responsibilities for which he is charged would have certainly prevented such injuries.

    **WHEREFORE**, Plaintiff demands judgment against ROLDOFO LLANES in his individual capacity for compensatory and punitive damages, pain and anguish, costs, reasonable attorneys' fees pursuant to 42 U.S.C. § 1988, and such other and further relief as the Court deems appropriate.

<div align="center">

**STATE CLAIMS**

**COUNT X**
**False Imprisonment/Arrest – State Tort**

</div>

**(Defendants ORTIZ and GROSSMAN)**

105.    Plaintiff incorporates paragraphs 1 - 49 as if specifically pled herein.

106.    The initial detention of SEBASTIAN by GROSSMAN after he summoned ORTIZ, and the subsequent detention of SEBASTIAN by Defendants ORTIZ and/or GROSSMAN, were illegal as it was beyond the scope and time necessary to issue a traffic citation.

107.    The removal of SEBASTIAN from his vehicle, and forced placement over the hood of a police car, face down, at the direction of GROSSMAN and/or ORTIZ was without any legitimate basis and constitutes false imprisonment as neither ORTIZ nor GROSSMAN had any articulable suspicion of criminal activity or legitimate belief that such action was necessary for their own safety.

108.    The formal arrest and imprisonment of SEBASTIAN for the offenses related to obstruction and display of a firearm was plainly incompetent. No reasonable officer would have concluded that probable cause or arguable probable cause existed to support the arrests.

109.    As a direct and proximate result of the illegal detention and false imprisonment of SEBASTIAN by ORTIZ and/or GROSSMAN he suffered physical injury, loss of income, reputational damage resulting in loss of future earning capacity, and emotional harm.

**WHEREFORE** Plaintiff SEBASTIAN seeks entry of this Court's order of final judgment against Defendants GROSSMAN and ORTIZ, jointly and severally for all damages incurred, costs, and such other relief that the Court deems just and proper.

<div align="center">

**COUNT XI**
**Malicious Prosecution – State Tort**
**(Defendants ORTIZ and GROSSMAN)**

</div>

110.    Plaintiff hereby incorporates paragraphs 1 -49 as if specifically pled herein.

111. As a direct and proximate result of the illegal arrest of the Plaintiff SEBASTIAN, a criminal case was commenced against him in Miami-Dade County (case number M-15-024049) on or about July 20, 2015.

112. That case was terminated in favor of SEBASTIAN on or about August 14, 2015.

113. The actions of Defendants ORTIZ and/or GROSSMAN were without any legal justification such that they constitute malice.

114. As a direct and proximate result of the arrest of Plaintiff SEBASTIAN and the subsequent initiation of criminal process by Defendants ORTIZ and/or GROSSMAN SEBASTIAN suffered loss of income, reputational damage resulting in loss of future earning capacity, and physical and emotional harm.

**WHEREFORE** Plaintiff SEBASTIAN seeks entry of this Court's order of final judgment against Defendants GROSSMAN and ORTIZ, jointly and severally for all damages incurred, costs, and such other relief that the Court deems just and proper.

<div align="center">

**COUNT XII**
**Intentional Infliction of Emotional Distress – State Tort**
**(Defendants ORTIZ, GROSSMAN, CROCKER and DOE)**

</div>

115. Plaintiff hereby incorporates paragraphs 1 - 49 as if specifically pled herein.

116. The actions of Defendants ORTIZ and/or GROSSMAN in determining to arrest SEBASTIAN were an unlawful and corrupt abuse and usurpation of their sworn oaths to uphold the laws of the State of Florida and the United States.

117. Likewise, Defendant DOE and/or ORTIZ abused the color of authority, using police powers to intentionally cause pain and suffering to SEBASTIAN. More than *de minimis* force used in the course of an arrest, DOE and/or ORTIZ used, and threatened to use, metal handcuffs as a weapon to inflict injury and suffering. DOE and/or ORTIZ were

consciously aware of the injury being inflicted upon SEBASTIAN, and purposely chose to continue or increase the level of pain to SEBASTIAN. ORTIZ's and/or DOE's wanton conduct caused long term physical injury and severe emotional distress to SEBASTIAN.

118. CROCKER, and/or DOE, at the specific instruction of GROSSMAN and/or ORTIZ, or with the approval of GROSSMAN and/or ORTIZ, did intentionally and maliciously force SEBASTIAN to sit inside the rear of a City of Miami Police vehicle under circumstances which were life-threatening.

119. This vehicle was an older model car, the back seat of which was being used at the time to store automobile tires, tire irons and other car parts. Because there was not sufficient space for SEBASTIAN to sit normally, he was forced into a position such that his body was bent in an awkward manner causing further inability to breathe as well as pain from the overtightened restraints.

120. Outrageously, CROCKER, at the direction of ORTIZ, GROSSMAN and/or DOE, or with their approval, purposely rolled the windows of the vehicle up, or failed to lower them sufficiently, with the intent to cause SEBASTIAN to remain in a closed and insufficiently ventilated space with the temperature rapidly rising. This situation was dangerous and likely to cause death or great bodily harm. SEBASTIAN suffered heat exhaustion and delirium.

121. As this was occurring ORTIZ, GROSSMAN and/or DOE stood nearby watching what was happening, ignoring Plaintiff SEBASTIAN'S, ignoring his pleas for relief, and refusing to intervene.

**WHEREFORE** Plaintiff SEBASTIAN seeks entry of this Court's order of final judgment against Defendants ORTIZ, GROSSMAN, CROCKER, and DOE, jointly and

severally for compensatory damages, costs, and such other relief that the Court deems just and proper.

<div align="center">

**COUNT XIII**
**Assault and/or Battery**
**(Defendants ORTIZ, GROSSMAN, DOE and CROCKER)**

</div>

122.    Plaintiff re-alleges paragraphs 1 through 49 above, and incorporates them into this Count.

123.    On July 7, 2015 Defendants ORTIZ and/or DOE did touch or strike Plaintiff SEBASTIAN in an offensive manner against his will, using metal handcuffs in a manner which was specifically intended to cause significant pain and discomfort.

124.    Notwithstanding the legality or illegality of the Plaintiff's arrest itself, these Defendants' use of the handcuffs was not within the scope of their lawful duties as the manner in which the cuffs were used was intended as punishment and not for restraint purposes.

125.    In doing so ORTIZ and/or DOE caused constriction of the blood circulation, as well as nerve damage, in one or both of SEBASTIAN'S hands and/or upper extremities resulting in temporary and permanent loss of sensation.

126.    At no time during the events giving rise to this action did SEBASTIAN commit any act, motion or gesture to oppose any member of the Miami Police Department, any police officer, or any other person, that might reasonably have been interpreted or perceived as a threat to their safety, health or well-being.

127.    SEBASTIAN repeatedly requested of the Defendants ORTIZ, GROSSMAN, CROCKER and/or DOE that the handcuffs be loosened as he was suffering extreme pain and anguish. Therefore, each Defendant knew the manner in which the handcuffs were being employed was causing injury. Each of the Defendants neglected SEBASTIAN'S

obvious pain.

128.    Defendant CROCKER then placed SEBASTIAN into the rear compartment of a vehicle filled with other items such that there was insufficient space for SEBASTIAN to remain without causing pain and constriction of his ability to breath normally.

129.    At the instruction, direction and/or approval of Defendants GROSSMAN, ORTIZ and/or DOE, CROCKER left the car unventilated causing further inability of SEBASTIAN to breath, and to suffer extreme physical and mental anguish from unbearable rising temperature.

130.    As a direct and proximate result of the force, or threat of force, used by ORTIZ, GROSSMAN, CROCKER and/or DOE in the use of handcuffs, placement in a vehicle, and/or trapping him the vehicle SEBASTIAN suffered extreme pain and suffering, as well as temporary and/or permanent physical injury.

WHEREFORE Plaintiff SEBASTIAN seeks entry of this Court's order of final judgment against Defendants ORTIZ, GROSSMAN, CROCKER and DOE for all damages incurred, attorney's fees, costs, and such other relief that the Court deems just and proper.

## COUNT XIV
### Libel
### (Defendants GROSSMAN and ORTIZ)

131.    Plaintiff re-alleges paragraphs 1 through 49 above, and incorporates them into this Count.

132.    As of July 7, 2015 the Plaintiff SEBASTIAN was a person of good name and reputation, and enjoyed the esteem and good opinion of his colleagues and employer, which included a reputation as a law abiding citizen and an honorably discharged military veteran.

133.    At all times material hereto there existed no reason or cause for Defendants GROSSMAN or ORTIZ to believe otherwise.

134.    During the traffic stop and warrantless search of SEBASTIAN'S vehicle it became known to these Defendants that he was employed by Miami-Dade County in a position of trust and respect; providing security to the public, and authorized to carry a firearm in furtherance of his duties.

135.    On July 7, 2015 Defendants GROSSMAN and/or ORITZ determined to maliciously, willfully and purposely defame SEBASTIAN by falsifying official documents.

136.    The falsification of the official documents by ORTIZ and GROSSMAN - which took the form of police reports or other documents related SEBASTIAN'S arrest – was done with was the specific intent to cause SEBASTIAN to lose his employment by ruining his reputation and good name, thereby causing him economic and emotional harm.

137.    At the time they falsified the official documents Defendants GROSSMAN and ORTIZ knew they would be used by the prosecuting authority and government of Miami-Dade County to institute criminal charges against SEBASTIAN.

138.    As a direct and proximate result of the knowingly false statements made by ORTIZ and GROSSMAN, Plaintiff was fired from his employment. The stated reason for the firing was that the statements made by these Defendants reflected negatively on SEBASTIAN'S character, morality, fitness for employment, or integrity.

139.    As a direct and proximate result of the false statements made by ORITZ and GROSSMAN, SEBASTIAN has suffered, financial injury, loss of reputation and good name, loss of enjoyment of life and emotional injury.

    **WHEREFORE** Plaintiff RUBEN SEBASTIAN seeks judgment against Defendants GROSSMAN and ORTIZ jointly and severally for compensatory damages,

costs, and such other relief that the Court deems just and proper.

## COUNT XV
## Claim for *Respondeat Superior* Liability
## (Defendant CITY OF MIAMI)

140.    Plaintiff re-alleges paragraphs 1 through 49 above, and incorporates them into this Count.

141.    Subject to certain statutory limitations, the Defendant CITY is liable for the negligent or wrongful acts of its employees while acting within the scope of their office or employment to the same extent as a private employer.

142.    At all relevant times, Defendants ORTIZ, GROSSMAN, JOHN DOE and/or CROCKER committed the torts of battery, false imprisonment, civil conspiracy, infliction of emotional distress, libel and/or negligence while acting within the course and scope of their employment as employees of the Defendant CITY.

143.    One statutory limitation on imposing respondent superior liability on the Defendant City is that it "shall not be liable in tort for the acts or omissions of an officer, employee, or agent committed while acting outside the scope of her or his employment or committed in bad faith or with malicious purpose or in a manner exhibiting willful and wanton disregard of human rights, safety, or property."

144.    As permitted by Fed. R. Civ. P. 8(d), in the alternative to the contrary allegations set forth in this Complaint, Plaintiff SEBASTIAN alleges that the Defendant Officers did not commit the above-mentioned torts of battery, false imprisonment, civil conspiracy, infliction of emotional distress, libel or negligence in bad faith or with malicious purpose, or in a manner exhibiting willful and wanton disregard of human rights, safety, or property.

145.    Accordingly, respondent superior liability ought to be imposed on the Defendant

CITY for the Defendant Officers' acts of battery, false imprisonment, civil conspiracy, and negligence to the extent provided by law.

**WHEREFORE** Plaintiff RUBEN SEBASTIAN seeks judgment against Defendant CITY for compensatory damages, costs, and such other relief that the Court deems just and proper.

<div align="center">

**COUNT XVI**
**Negligent Supervision or Retention**
**(Defendants CITY and LLANES in his individual capacity as Chief of Police)**

</div>

146.    Plaintiff re-alleges paragraphs 1 through 49 above, and incorporates them into this Count.

147.    At all times material hereto the CITY and LLANES had a duty to protect the citizenry, including SEBASTIAN, from City of Miami Police officers, who were unfit to perform the tasks or functions within their discretionary authority.

148.    Prior to July 7, 2015 the CITY and LLANES knew, or should have known, of a pattern of violations of rules and regulation by Defendant ORTIZ resulting in abuses of civil rights against the public.

149.    Based on the pattern of rights violations prior to July 7, 2016 it was reasonably foreseeable to the CITY and LLANES that ORTIZ would continue to violate rules and regulations resulting in such abuses.

150.    Despite this knowledge the CITY and LLANES failed to take any sufficient corrective action so as to prevent future violations, including the violation of SEBASTIAN'S constitutional and legal rights as alleged herein. Consequently, these Defendants breached the duty owed to SEBASTIAN.

151.    As a direct and proximate cause of the CITY'S and LLANES' failure to adequately

supervise ORTIZ, and their decision to retain ORTIZ, despite the foreseeable consequences of rights violations, Plaintiff SEBASTIAN has suffered injury in the form of physical and emotional injury, financial and reputational loss, and loss of future income earning capacity.

**WHEREFORE** the Plaintiff SEBASTIAN seeks order of the Court for final judgment awarding him compensatory damages, and costs, and such other relief as the Court may deem just.

## <u>DEMAND FOR JURY TRIAL</u>

As to each count and claim herein, which is so triable, the Plaintiff RUBEN SABASTIAN seeks trial by jury.

*Respectfully submitted* this 8th day of September, 2016

<div style="margin-left:40%">

<u>s/ David A. Frankel</u>
David A. Frankel, Esq.

**Law Offices of David A. Frankel, P.A.**
20 South East 20th Street
Fort Lauderdale. Florida 33315
(954) 683-0300
Fla. Bar Number 741779
david@BlueLotusLaw.com
Service@BlueLotusLaw.com

</div>