UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

### Case Number: 16-20501-CIV-MORENO

RUBEN SEBASTIAN,

       Plaintiff,

vs.

JAVIER ORTIZ, JAY GROSSMAN, DANIEL
CROCKER, CITY OF MIAMI, LLANES
RODOLFO, and JOHN DOE,

       Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTIONS TO DISMISS

This is a civil rights case brought by Ruben Sebastian against four Miami police officers,[1]

Chief of Police Rodolfo Llanes, and the City of Miami. Sebastian alleges that the officers

violated his civil rights during a traffic stop and arrest. The 16-count amended complaint

includes nine federal civil rights violations under 42 U.S.C. § 1983 and seven state tort claims,

for which Sebastian seeks compensatory and punitive damages. The federal claims include:

- Count 1. Fourth Amendment illegal search against Lieutenant Ortiz and Officer Grossman;

- Count 2. Fourth Amendment false imprisonment/arrest against Lieutenant Ortiz and Officer Grossman;

- Count 3. Fourth Amendment malicious prosecution against Lieutenant Ortiz and Officer Grossman;

- Count 4. Fourth Amendment excessive use of force against Lieutenant Ortiz and Officer Doe;

---

[1] One of the officers is a John Doe and so is not involved in the case at this time. The other three officers are Lieutenant Javier Ortiz, Officer Jay Grossman, and Officer Daniel Crocker.

- Count 5. First Amendment retaliation against Lieutenant Ortiz and Officer Grossman;

- Count 6. Fourth Amendment supervisory liability for directing unlawful acts against Lieutenant Ortiz;

- Count 7. Fourth Amendment supervisory liability for failure to stop unlawful acts against Lieutenant Ortiz;

- Count 8. Failure to investigate or discipline Lieutenant Ortiz against the City; and

- Count 9. Deprivation of rights for failure to prevent Lieutenant Ortiz's foreseeable abuse against Chief Llanes.

The state tort claims include:

- Count 10. False imprisonment/arrest against Lieutenant Ortiz and Officer Grossman;

- Count 11. Malicious prosecution against Lieutenant Ortiz and Officer Grossman;

- Count 12. Intentional infliction of emotional distress against Lieutenant Ortiz and Officers Grossman, Crocker, and Doe;

- Count 13. Assault or battery against Lieutenant Ortiz and Officers Grossman, Crocker, and Doe;

- Count 14. Libel against Lieutenant Ortiz and Officer Grossman;

- Count 15. *Respondeat superior* liability against the City; and

- Count 16. Negligent supervision or retention against the City.[2]

This cause comes before the Court upon Defendants' three motions to dismiss—one by Officers Grossman and Crocker, one by the City and Chief Llanes, and one by Lieutenant Ortiz.[3] Generally, the officers argue that probable cause and qualified immunity bar the federal claims, and that Sebastian fails to establish the required elements of the state tort claims. Lieutenant

---

[2] The amended complaint also alleges Count 16 against Chief Llanes. But, Sebastian voluntarily dismissed Count 16 against Chief Llanes in his response brief.

[3] Lieutenant Ortiz is represented by separate counsel.

Ortiz further argues that the excessive force claim fails because the force was *de minimus*. The City and Chief Llanes echo the officers' arguments, which they contend moot the supervisory liability claims. They also argue for sovereign immunity.

The Court has reviewed the motions, responses, and replies. Additionally, the parties raised some of their briefed arguments at oral argument on September 28, 2017. As explained below, Officer Grossman and Officer Crocker's motion to dismiss is **GRANTED**; the City and Chief Llanes' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**; and Lieutenant Ortiz's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## I.     BACKGROUND

The allegations, which the Court assumes are true and construes in the light most favorable to Sebastian for purposes of the motions to dismiss, are as follows.

### A.     The Traffic Stop and Arrest

On July 7, 2015, Sebastian was pulled over for speeding by Officer Grossman, who was on duty. Officer Grossman approached Sebastian's driver-side window and stated that he believed Sebastian had been speeding. Officer Grossman also requested to check the window tinting on the front windows to determine whether they were in compliance with state law. Sebastian agreed to the window check. Next, Officer Grossman stated that he wished to search the back seat of the car. Sebastian asked why. Officer Grossman responded that because of the window tinting on the rear windows he could not see inside the rear compartment. The front windows were rolled down, which rendered the back seat visible from where Officer Grossman was standing outside the driver's door—enough so to know that no other person was in the car.

Sebastian refused to allow Officer Grossman to search the car. Officer Grossman then called Lieutenant Ortiz to the scene and waited with Sebastian, who remained seated inside the car.[4]

When Lieutenant Ortiz arrived, he approached and also asked to search the car. The back seat remained as visible as it was at the time Officer Grossman stated he could not see into the back. Sebastian again refused. Lieutenant Ortiz then opened the driver's door and removed Sebastian from the car. At this time, Officer Doe had arrived to the scene.

After being removed from the car, Sebastian was restrained by either Lieutenant Ortiz or Officer Doe, who pressed Sebastian's face down on the hood of a police car and placed him in metal handcuffs, cutting off the circulation in his hands and cutting into the skin on his wrists. Sebastian protested, presumably about the tightness of the handcuffs. In response, either Lieutenant Ortiz or Officer Doe told him that if he continued to complain, "he knew of a way to make them tighter."

While Sebastian was bent over the police car in handcuffs, he continued to object to the search of his car, stating to Lieutenant Ortiz and Officer Grossman that they needed a warrant. Either Lieutenant Ortiz or Officer Grossman responded by asking him if he was a "YouTube lawyer" or "constitutionalist" and that they "didn't need a warrant." Both Lieutenant Ortiz and Officer Grossman then searched the car. They first removed groceries from the back seat. Then, one of them asked Sebastian whether there were any weapons in the car. Sebastian stated that there was a gun and that he had a permit to carry it, which was hanging from the rearview mirror. At the time, Sebastian was employed as a full-time armed security guard by Miami-Dade Transit, and was licensed and permitted to possess and carry a firearm.

---

[4] The amended complaint does not specify how long they waited for Lieutenant Ortiz to arrive.

Lieutenant Ortiz then reentered the car to look for the gun. Unable to locate it, he asked Sebastian to tell him where to find it. Sebastian said that it was in its holster inside the driver-side door's side pocket. After finding the gun there, either Lieutenant Ortiz or Officer Grossman told Sebastian that he would never return to his job with Miami-Dade County. Lieutenant Ortiz then arrested Sebastian for reckless display of a firearm.

Lieutenant Ortiz directed Officer Crocker, who had arrived at the scene, to place Sebastian in a police car to take him to the police station. Either Officer Doe or Lieutenant Ortiz removed the metal handcuffs and replaced them with plastic "flexi-cuffs" before sitting Sebastian in the back seat of the police car. Once Sebastian was in the car, Officer Crocker, in the presence of the other officers, raised all the windows with Sebastian inside. As the temperature inside the car rose, Sebastian became unable to breathe and asked the officers to open the door or window. Officer Crocker rolled a rear window down one or two inches, but refused Sebastian's request to roll it down further. Sebastian also asked to have the flexi-cuffs loosened because they were so tight that he began to lose feeling in his hands. During the time Sebastian remained in the police car, the temperature remained high.[5] Sebastian directly asked all four officers to roll down the windows, but they refused.

Sebastian was taken to the police station and his car was towed. He was charged with three criminal counts: two counts of resisting or obstructing an officer without violence and one count of reckless display of a firearm. Sebastian remained at the police department in handcuffs for over five hours until he was given a notice to appear in court and was released. On August 14, 2015, the prosecuting authority for Miami-Dade County abandoned all criminal charges

---

[5] The amended complaint does not specify how long Sebastian was in the police car.

against Sebastian.[6]  On January 19, 2016, Sebastian pleaded guilty to speeding on a municipal

road under Fla. Stat. § 316.189(1) for driving 39 miles per hour through the toll plaza to the

Rickenbacker Causeway, a 25-mile-per-hour zone.[7]

After Sebastian's arrest, his employment with Miami-Dade County was terminated and

he has been unable to find employment as an armed security guard for any employer.  In addition

to loss of employment, he continues to suffer nerve damage to his hands and wrists, emotional

pain and suffering, and reputational damages.

B.      **Lieutenant Ortiz's Alleged History**

Lieutenant Ortiz joined the police force in 2004.  Before July 7, 2015—the date of

Sebastian's arrest—Sebastian alleges that Lieutenant Ortiz had been:  (1) the subject of at least

23 citizen complaints filed with the City; (2) investigated by the City's Internal Affairs division

for using excessive force and failing to comply with the City's rules and regulations; (3)

investigated by the City's Civilian Investigative Panel for using excessive force; and (4) placed

on the Civilian Investigative Panel's monitoring list of officers demonstrating a pattern of

misconduct.

II.      **LEGAL STANDARD**

"A pleading that states a claim for relief must contain…a short and plain statement of the

claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  When ruling on a

motion to dismiss, a court must view the complaint in the light most favorable to the plaintiff and

accept the plaintiff's well-pleaded facts as true.  *See St. Joseph's Hosp., Inc. v. Hosp. Corp. of

Am.*, 795 F.2d 948, 953 (11th Cir. 1986).  However "[t]o survive a motion to dismiss, plaintiffs

---

[6] Speeding is not a criminal offense in Florida—it is a noncriminal infraction. *See* Fla. Stat. § 318.14 ("any person cited for a violation of Chapter 316…is charged with a noncriminal infraction.").

[7] This is not included in the amended complaint, but Sebastian's counsel, at oral argument, did not dispute that his client was speeding and that he entered a guilty plea.

must do more than merely state legal conclusions." *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1263 (11th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations" that provide "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2008); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).

### III.    ANALYSIS

Generally, Defendants' motions to dismiss raise four main issues. First, whether Officer Grossman had probable cause to make a custodial arrest. Second, whether the physical force applied to Sebastian exceeded the permissible limit, which increases with probable cause. Third, whether Sebastian sufficiently alleges libel. Fourth, whether the City or Chief Llanes should be liable for Lieutenant Ortiz's actions.

### A.    Probable Cause

Seven of Sebastian's claims depend on lack of probable cause: (1) Fourth Amendment illegal search; (2) Fourth Amendment false imprisonment/arrest; (3) state-law false imprisonment/arrest; (4) Fourth Amendment malicious prosecution; (5) state-law malicious prosecution; (6) First Amendment retaliation; and (7) supervisory liability for directing unlawful acts. Defendants argue for qualified immunity because Officer Grossman reasonably believed he had probable cause—imputed to Lieutenant Ortiz under the fellow officer rule—to make a custodial arrest for speeding. Sebastian responds that there was no probable cause for a custodial arrest because speeding is a noncriminal infraction in Florida, and there was no probable cause for any other criminal charge. This Court agrees with Defendants.

1.    ***Officer Grossman Had Probable Cause to Make a Custodial Arrest***

An arrest supported by probable cause or arguable probable cause entitles officers to qualified immunity. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1138 (11th Cir. 2007). But, a warrantless arrest with neither probable cause nor arguable probable cause violates the Constitution, and always provides a basis for Section 1983 liability. *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990). "The standard for determining whether probable cause exists is the same under Florida and federal law." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998). "Probable cause [to arrest] exists where 'the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996).

"The validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." *Bailey v. Bd. of Cnty. Comm'rs*, 956 F.2d 1112, 1119 n.4 (11th Cir. 1992). "When an officer makes an arrest which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002). Further, the subjective intentions and motivations of individual officers play no role in the probable cause analysis. *See Arkansas v. Sullivan*, 532 U.S. 769, 771-72 (2001); *Whren v. United States*, 517 U.S. 806, 812-13 (1996). "As long as probable cause existed to arrest the suspect for any offense, the arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges." *See Reid v. Henry County*, 568 Fed. App'x 745, 749 (11th Cir. 2014).

Here, Sebastian was arrested for: (1) resisting or obstructing an officer without violence, and (2) reckless display of a firearm. Defendants do not argue that there was probable cause for

either charge. Rather, they argue for qualified immunity solely based on probable cause to make a custodial arrest for speeding.[8]

Sebastian pleaded guilty to speeding on a municipal road in violation of Fla. Stat. § 316.189(1), which Defendants argue eviscerates any challenge to probable cause. Sebastian makes two arguments against probable cause. First, he argues that although there was undisputed probable cause to make a traffic stop, the officers were not permitted to make a custodial arrest for a speeding violation, which is a noncriminal offense in Florida. However, the Eleventh Circuit has directly addressed this issue and held that officers are permitted to make a custodial arrest for noncriminal offenses in Florida, specifically violations of Chapter 316. *See Ybarra v. City of Miami*, No. 03-14660, 2005 WL 6526126 (11th Cir. Jan. 5, 2005) (custodial arrest permitted where officers had probable cause that pedestrian walked on roadway where sidewalks were provided, in violation of Section 316.130(3)); *see also Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) (custodial arrest permitted for same violation); *Jeanty v. City of Miami*, 876 F. Supp. 2d 1334 (S.D. Fla. 2012) (Lenard, J.) (following *Ybarra*, holding that custodial arrest for noncriminal traffic infraction is constitutional). Thus, Officer Grossman clearly had probable cause to make a custodial arrest of Sebastian for speeding.

Second, Sebastian argues that the stop and the arrest are two separate events. According to Sebastian, Officer Grossman stopped Sebastian for speeding, but decided not to arrest him. At that point, Sebastian argues that the stop ended, and that the time to make an arrest had passed. Then, Sebastian argues, the officers decided to make a custodial arrest for the other offenses without probable cause only after Sebastian asserted his rights. This argument is flawed.

---

[8] The Court need not address whether there was probable cause to arrest Sebastian for resisting or obstructing an officer without violence or for reckless display of a firearm.

-9-

Officer Grossman had probable cause to arrest Sebastian for speeding. Once Sebastian was pulled over, he was not free to go. Officer Grossman did not issue a citation and permit Sebastian to drive away. Rather, Sebastian was detained during the entire course of events. Even if Sebastian is correct that the officers decided to escalate the arrest solely because of Sebastian's objections to the search, or for any other reason, the officers' subjective intentions and motivations play no role in the probable cause analysis. *See Sullivan*, 532 U.S. at 771-72. Here, Officer Grossman had probable cause that Sebastian had violated Section 316.189(1), which permitted a custodial arrest. That ends the analysis.

2. ***Officer Grossman's Probable Cause was Imputed to Lieutenant Ortiz Under the Fellow Officer Rule***

Under the "fellow officer rule," Lieutenant Ortiz may rely on Officer Grossman's probable cause. The "'fellow officer rule' states that when an arresting officer was absent for a significant portion of the events giving rise to probable cause, the arresting officer may rely upon his fellow officer's judgment about probable cause." *Williams v. Miami–Dade Police Dep't*, 297 Fed. App'x 941, 946 (11th Cir. 2008); *see also Berry v. State*, 493 So. 2d 1098, 1100 (Fla. Dist. Ct. App. 1986) (legitimacy of stop, seizure, or arrest depends on whether officer supplying information had requisite probable cause). Thus, if the officer supplying the information does not have probable cause to make an arrest, then the officer receiving the information is not shielded by the fellow officer rule; the arrest is invalid, and any subsequent search violates the arrestee's Fourth Amendment rights. *Berry*, 493 So. 2d at 1100. Here, Officer Grossman had probable cause to make a custodial arrest of Sebastian for speeding. Lieutenant Ortiz was permitted to rely on Officer Grossman's judgment about probable cause. Thus, under the fellow officer rule, the probable cause was imputed to Lieutenant Ortiz.

3.    *Qualified Immunity Bars Sebastian's Claims for Illegal Search, False Imprisonment/Arrest, Malicious Prosecution, Retaliation, and Directing Unlawful Acts*

Because the officers had probable cause to make a custodial arrest, they are entitled to qualified immunity on all of Sebastian's claims that hinge on probable cause. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). "Because qualified immunity is a defense not only from liability, but also from suit, it is 'important for a court to ascertain the validity of a qualified immunity defense as early in the lawsuit as possible.'" *Lee*, 284 F.3d at 1194 (quoting *GJR Invs., Inc. v. County of Escambia*, 132 F.3d 1359, 1370 (11th Cir.1998)); *see also Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) ("It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage if the complaint fails to allege the violation of a clearly established constitutional right.").

To receive qualified immunity, a public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee*, 284 F.3d at 1194. "[T]he burden then shifts to the plaintiff to show that the grant of qualified immunity is appropriate." *Oliver v. Florino*, 586 F.3d 898, 905 (11th Cir. 2009) (citations omitted). In meeting this burden, the plaintiff must show both that: (1) the defendant violated a constitutional right, and (2) the right was clearly established when the violation occurred. *Id.* A federal right is "clearly established" when "'[t]he contours of [the] right [are] sufficiently clear'

that every 'reasonable official would have understood that what he is doing violates that right.'"

*al-Kidd*, 563 U.S. at 741 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* "If case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1557 (11th Cir. 1993).

Here, the officers were acting within the scope of their discretionary authority as police officers when the allegedly wrongful acts occurred. Thus, to defeat qualified immunity, Sebastian has the burden to show that: (1) the officers violated a constitutional right, and (2) the right was clearly established at the time of the incident.

> a.    Illegal Search (Count 1)

Under the Fourth Amendment, an individual has a right to be free from "unreasonable searches and seizures." *Skop*, 485 F.3d at 1137. The "reasonableness" of an arrest is determined by the presence or absence of probable cause for the arrest. *Id.* "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Virginia v. Moore*, 553 U.S. 164, 177 (2008) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)); *see also New York v. Belton*, 453 U.S. 454, 460 (1981) ("[W]hen a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."). Here, Officer Grossman had probable cause to make a custodial arrest. Thus, the officers were permitted to search Sebastian's passenger compartment as part of that arrest. Officer Grossman and Lieutenant Ortiz are entitled to qualified immunity. Sebastian has no claim for illegal search. Thus, Count 1 is dismissed.

### b. False Imprisonment/Arrest (Counts 2 and 10)

Probable cause bars state and federal false imprisonment/arrest claims. *See Marx*, 905 F.2d at 1505-06. Here, Officer Grossman had probable cause to make a custodial arrest. Thus, he and Lieutenant Ortiz are entitled to qualified immunity. Sebastian has no claim for false imprisonment/arrest under either the Fourth Amendment or under Florida law. Thus, Counts 2 and 10 are dismissed.

### c. Malicious Prosecution (Counts 3 and 11)

Probable cause bars state and federal malicious prosecution claims. *See Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004) (common law malicious prosecution claim requires "absence of probable cause"); *Bloom v. Alvereze*, 498 Fed. App'x 867, 875 (11th Cir. 2012) (federal malicious prosecution claim requires elements of common law malicious prosecution). Here, Officer Grossman had probable cause to make a custodial arrest. Thus, he and Lieutenant Ortiz are entitled to qualified immunity. Sebastian has no claim for malicious prosecution under either the Fourth Amendment or under Florida law. Thus, Counts 3 and 11 are dismissed.

### d. Retaliation (Count 5)

Sebastian argues that he was arrested in retaliation for asserting his rights. However, the officers' subjective intentions and motivations play no role in the probable cause analysis. *See Sullivan*, 532 U.S. at 771-72. Here, Officer Grossman had probable cause that Sebastian violated Section 316.189(1), which permitted a custodial arrest. Sebastian has not shown that at the time of his arrest, it was clearly established that an arrest supported by probable cause could violate the First Amendment. *See Reichle v. Howards*, 566 U.S. 658 (2012). Thus, officer Grossman and Lieutenant Ortiz are entitled to qualified immunity. Sebastian has no claim for First Amendment retaliation. Thus, Count 5 is dismissed.

e.    Directing Unlawful Acts (Count 7)

Sebastian's claim against Lieutenant Ortiz for allegedly directly unlawful acts is premised on the alleged underlying unlawful search and arrest without probable cause. Because the Court finds that the underlying acts were lawful and that Lieutenant Ortiz and Officer Grossman are entitled to qualified immunity on those claims, Sebastian also has no claim against Lieutenant Ortiz for directing unlawful acts. Thus, Count 7 is dismissed.

B.    **Excessive Force**

The officers' use of force relates to four of Sebastian's claims: (1) excessive use of force against Lieutenant Ortiz and Officer Doe; (2) supervisory liability against Lieutenant Ortiz for failure to stop unlawful acts; (3) intentional infliction of emotional distress against all four officers; and (4) assault or battery against all four officers. Defendants argue that the force applied was *de minimus*. However, accepting Sebastian's allegations as true, as the Court must at the motion to dismiss stage, the Court disagrees with Defendants.

1.    *Sebastian Sufficiently Alleges Excessive Use of Force (Count 4)*

At the motion to dismiss stage, the Court cannot dismiss Sebastian's excessive force claim. "The Fourth Amendment's freedom from unreasonable searches and seizures encompasses the plain right to be free from the use of excessive force in the course of an arrest." *Lee*, 284 F.3d at 1197. But, "Fourth Amendment jurisprudence has long recognized that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

Sebastian first argues that the use of *any* force was unlawful because the arrest itself was unlawful. But, because the Court finds that the arrest was lawful, some degree of force was permitted. *See Jackson v. Sauls*, 206 F.3d 1156, 1165, 1171 (11th Cir. 2000) (if probable cause

for arrest exists, standard use of force permitted); *Durruthy*, 351 F.3d at 1094 (police may use *de minimus* force when making custodial arrest "regardless of the severity of the alleged offense" and even if force applied was "unnecessary"). Thus, the operative issue is whether the officers' conduct was objectively reasonable under the circumstances. *See Vinyard*, 311 F.3d at 1347 (when evaluating excessive force claim, "courts must ask whether a reasonable officer would believe that this level of force is necessary in the situation at hand.").

The Eleventh Circuit recognizes that a typical arrest involves some force and injury. *See Rodriguez v. Farrell*, 280 F.3d 1341, 1351 (11th Cir. 2002). Whether an officer used excessive force turns on a number of factors, such as "the severity of the crime, whether the suspect pose[d] an immediate threat, and whether the suspect [was] resisting or fleeing. Use of force must be judged on a case-by-case basis." *Gold v. City of Miami*, 121 F.3d 1442, 1446 (11th Cir. 1997) (quoting *Post*, 7 F.3d at 1559). In excessive force cases, "qualified immunity applies unless application of the standard would inevitably lead every reasonable officer in [the defendant officer's position] to conclude that the force was unlawful." *See Post*, 7 F.3d at 1559.

Here, the severity of Sebastian's infraction was very minor. Indeed, speeding is not a crime in Florida. Further, Sebastian did not pose an immediate threat and was not resisting or fleeing. These factors presented in Sebastian's individual circumstances all weigh in favor of a lower permissible use of force. Sebastian alleges that Lieutenant Ortiz or Officer Doe used excessive force by either: (1) placing Sebastian in handcuffs that were too tight, or (2) placing Sebastian in an unreasonably hot and unventilated police car for an extended period.

### a.    Handcuffs

As pleaded in the amended complaint, Sebastian was first restrained with metal handcuffs when he was removed from his car. He alleges that the handcuffs cut off circulation and cut into his skin. When he protested, Lieutenant Ortiz or Officer Doe told him that "he knew of a way to

make them tighter." Before Sebastian was placed in the police car, either Lieutenant Ortiz of Officer Doe replaced the metal handcuffs with plastic "flexi-cuffs." Sebastian asked to have them loosened because he began to lose feeling in his hands. He remained in handcuffs for over five hours. As a result, Sebastian alleges that he suffers nerve damage and permanent loss of sensation to his hands and wrists because of the nature in which he was handcuffed.

Painful handcuffing, without more, does not constitute excessive force where the resulting injuries are minimal. Citing three cases, Lieutenant Ortiz argues that Sebastian's handcuffing does not rise to the level of excessive force. *See Gold*, 121 F.3d 1442 (granting qualified immunity where handcuffs applied too tightly for 20 minutes, ***causing minor pain and skin abrasions***) (emphasis added); *Rodriguez*, 280 F.3d at 1351-53 (granting qualified immunity despite fact that injuries caused by twisting and jerking plaintiff's arm when applying handcuffs ***aggravated a pre-existing injury*** that necessitated 25 surgeries and eventual amputation of plaintiff's arm below the elbow) (emphasis added); *Nolin v. Isbell*, 207 F.3d 1253, 1255-58 (11th Cir. 2000) (granting qualified immunity where officer shoved plaintiff into car, pushed knee into his back, held his head against the van, uncomfortably searched his groin area, and placed him in handcuffs, ***causing minor bruising***) (emphasis added).

However, these cases are easily distinguishable. Unlike in *Gold* and *Nolin*, where the plaintiffs suffered only minor pain, skin abrasions, and minor bruising, here, Sebastian alleges much more severe injuries—nerve damage and permanent loss of sensation to his hands and wrists. *Cf. Borsella v. Parker*, No. 11-1249, 2013 WL 375480, at *4 (M.D. Fla. Jan. 31, 2013) (granting qualified immunity, but only after evidence failed to show handcuffs caused ***more than minimal injuries***) (emphasis added). And in *Rodriguez*, although the resulting injuries were very severe—25 surgeries and eventual amputation—the court clearly distinguished the case,

stating that the plaintiff's recent elbow surgery "made what otherwise would be a common non-excessive handcuffing technique (that ordinarily would be painful but cause minimal injury) a maneuver that caused severe injury and tragic results." 280 F.3d at 1351. Thus, *Rodriguez* does not support qualified immunity for handcuffing even where it results in serious injuries. Rather, it supports qualified immunity for handcuffing that ordinarily would cause minimal injury, but caused severe injury because of a pre-existing condition.

Sebastian's excessive force claim against Lieutenant Ortiz and Officer Doe is based on the handcuffing injuries. Because Sebastian alleges that he suffers nerve damage and permanent loss of sensation to his hands and wrists due to handcuffing, and severe injuries resulting from handcuffing can be a basis for an excessive force claim, the Court must permit Count 4 to proceed to discovery. Lieutenant Ortiz and Officer Doe are free to reargue the issue at summary judgment with the benefit of a more complete factual record, particularly with respect to Sebastian's alleged severe injuries.[9]

b.    <u>Confinement in the Police Car</u>

As pleaded in the amended complaint, once Sebastian was inside the police car, Officer Crocker, in the presence of the other officers, raised all the windows. As the temperature rose, it became harder for Sebastian to breathe and he asked the officers to open the door or window. Officer Crocker rolled a rear window down one or two inches, but refused Sebastian's request to roll it down further. Sebastian asked all four officers to roll down the windows, but they refused. The amended complaint does not specify how long Sebastian was in the police car in these conditions, but counsel indicated at oral argument that it was less than one hour. Sebastian alleges no lasting injuries resulting from the heat.

---

[9] The Court notes that at oral argument, when asked about the relief Sebastian is seeking, Sebastian's counsel did not specifically mention any medical expenses or any physical injuries.

Although the officers may have exhibited poor judgment, their actions related to Sebastian's confinement in the car do not rise to the level of excessive force, especially considering that Sebastian was lawfully arrested. *Cf. Borsella*, 2013 WL 375480, at *4 (confinement in hot car for 35 minutes does not amount to excessive force).

### 2. *Supervisory Liability for Failure to Stop Unlawful Acts (Count 7)*

Sebastian's claim against Lieutenant Ortiz for allegedly failing to stop unlawful acts is premised on Sebastian's handcuffing and confinement in the police car. The excessive force claim is brought against Lieutenant Ortiz and Officer Doe. If Officer Doe is found to be the officer that actually applied the handcuffs, this claim is brought in the alternative against Lieutenant Ortiz in his supervisory capacity. Specifically, Sebastian alleges that Lieutenant Ortiz failed to intervene when Officer Doe placed Sebastian in handcuffs that were too tight and then placed him in an unventilated car. "If a police officer, whether supervisory or not, fails or refuses to intervene when a constitutional violation…takes place in his presence, the officer is directly liable under Section 1983." *Sanders v. City of Union Springs*, 207 Fed. App'x, 960, 965 (11th Cir. 2006). "It is not necessary that a police officer actually participate in the use of excessive force in order to be held liable under section 1983. An officer who is present at the scene, and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance." *Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002). Because Sebastian sufficiently alleges the underlying excessive force claim, he also sufficiently alleges the corresponding supervisory claim against Lieutenant Ortiz. Thus, Count 7 will proceed to discovery.

### 3. *Assault or Battery (Count 13)*

Sebastian brings a state law assault or battery claim against all four officers. The claim against Lieutenant Ortiz and Officer Doe is based on both the handcuffing and the confinement

in the police car. The claim against Officers Grossman and Crocker is based solely on the confinement in the police car. Because the Court finds that Sebastian's confinement in the police car did not rise to a level of impermissible force in a lawful arrest, Sebastian has no claim for assault or battery against Officers Grossman and Crocker. Thus, Count 13 is dismissed as against Officers Grossman and Crocker. Further, Count 13 as asserted against Lieutenant Ortiz and Officer Doe is dismissed without prejudice, with leave to refile the claim in state court.

4. ***Intentional Infliction of Emotional Distress (Count 12)***

Sebastian brings a state law claim for intentional infliction of emotional distress against all four officers. "Under Florida law, to state a cause of action for intentional infliction of emotional distress, a complaint must allege four elements: '(1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe.'" *Vilceus v. City of West Palm Beach*, No. 08-80968, 2009 WL 2242604, at *5 (S.D. Fla. July 27, 2009) (Marra, J.) (quoting *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594 (Fla. Dist. Ct. App. 2007)).

Defendants argue that their conduct in effectuating Sebastian's arrest was not sufficiently "outrageous," in part because there are no allegations that Sebastian suffered any permanent or severe injuries. However, as with the assault or battery claim, this claim against Officers Grossman and Crocker is based solely on the confinement in the police car. Because the Court finds that Sebastian's confinement in the police car did not rise to a level of impermissible force in a lawful arrest, the conduct is not sufficiently "outrageous" to support a claim for intentional infliction of emotional distress. Sebastian has no claim against Officers Grossman and Crocker. Thus, Count 12 is dismissed as against Officers Grossman and Crocker. Further, Count 12 as asserted against Lieutenant Ortiz and Officer Doe is dismissed without prejudice, with leave to refile the claim in state court.

-19-

C.   **Absolute Immunity Bars Sebastian's Libel Claim (Count 14)**

Sebastian brings a libel claim against Officer Grossman and Lieutenant Ortiz, alleging

that they falsified information contained in police and arrest reports.  The Florida Supreme Court

has stated that the controlling factor in deciding whether a public employee is absolutely immune

from actions for defamation is whether the communication was made within the scope of the

officer's duties.  *See City of Miami v. Wardlow*, 403 So.2d 414, 416 (Fla. 1981); *see also*

*Stephens v. Geoghegan*, 702 So. 2d 517, 521 (Fla. Dist. Ct. App. 1997) (police officers

absolutely immune from libel where claim was rooted in official duties).  Although at least one

court has suggested that the law in *Wardlow* should be re-examined as to whether absolute

immunity should be afforded to mid-level and low-level government employees, *see Alfino v.*

*Dep't of Health and Rehabilitative Servs.*, 676 So. 2d 447, 449 (Fla. Dist. Ct. App. 1996) (Sharp,

J., concurring), *Wardlow* still controls.  Sebastian's libel claim is based on information contained

in the officers' arrest affidavit and other reports, which clearly are drafted as part of the officers'

official discretionary duties.  Sebastian has no claim for libel.  Thus, Count 14 is dismissed.

D.   **Supervisory Claims Against the City and Chief Llanes**

Sebastian brings two federal claims and two state claims alleging supervisory liability

against either the City or Chief Llanes.  The federal claims are:  (1) failure to investigate or

discipline Lieutenant Ortiz against the City; and (2) deprivation of rights for failure to prevent

Lieutenant Ortiz's foreseeable abuse against Chief Llanes.  The state claims are:  (1) *respondeat*

*superior* liability against the City; and (2) negligent supervision or retention against the City.

1.   *Federal Claims Against the City and Chief Llanes (Counts 8 and 9)*

Sebastian brings one federal claim each against the City and Chief Llanes.  First,

Sebastian alleges that the City maintained a custom or practice that failed to properly investigate

or discipline Lieutenant Ortiz, a person who the City knows, or should know, repeatedly violates

citizens' rights. Second, Sebastian alleges that Chief Llanes breached his duty to protect

Sebastian from Lieutenant Ortiz, a person who Chief Llanes knew, or should have known, posed

a foreseeable risk to violate Sebastian's rights. Sebastian claims that during the course of

Lieutenant Ortiz's employment, the City and Chief Llanes became aware, or should have

become aware, of information indicating that Lieutenant Ortiz was unable or unwilling to follow

orders and departmental policies and was unfit to serve in a capacity where violations of citizens'

rights could occur. Indeed, between the time Lieutenant Ortiz joined the police force in 2004

and Sebastian's arrest on July 7, 2015, Sebastian alleges that Lieutenant Ortiz had been: (1) the

subject of at least 23 citizen complaints filed with the City; (2) investigated by the City's Internal

Affairs division for using excessive force and failing to comply with the City's rules and

regulations; (3) investigated by the City's Civilian Investigative Panel for using excessive force;

and (4) placed on the Civilian Investigative Panel's monitoring list of officers demonstrating a

pattern of misconduct.

The City and Chief Llanes' sole argument for dismissing these two federal claims is that

the underlying claims against the individual officers are insufficient. However, the Court finds

that Sebastian sufficiently alleges Fourth Amendment claims for excessive force and supervisory

liability against Lieutenant Ortiz. Thus, the derivative claims against the City and Chief Llanes

cannot be dismissed on that ground. Accepting Sebastian's allegations as true, as the Court must

at the motion to dismiss stage, Sebastian has sufficiently stated claims against the City and Chief

Llanes in their supervisory roles over Lieutenant Ortiz. Thus, the Court must permit Counts 8

and 9 to proceed to discovery.

2.    **Respondeat Superior** *(Count 15)*

Sebastian brings a state tort claim for *respondeat superior* against the City based on the

officers' alleged state torts. As with the state law claims for assault or battery and intentional

-21-

infliction of emotional distress, Count 15 is dismissed without prejudice, with leave to refile the claim in state court.

3. ***Negligent Retention or Supervision (Count 16)***

Sebastian brings a state tort claim for negligent supervision against the City, alleging that it failed to supervise Lieutenant Ortiz, knowing that he had a significant history of committing acts outside the scope of his employment that were abusive and dangerous to citizens. "[N]egligent hiring or retention under Florida law 'allows for recovery against an employer for acts of an employee committed outside the scope and course of employment.'" *Belizaire v. City of Miami*, 944 F. Supp. 2d 1204, 1214 (S.D. Fla. 2013) (Moreno, J.) (quoting *Garcia v. Duffy*, 492 So. 2d 435, 438 (Fla. Dist. Ct. App. 1986)). But here, the conduct Sebastian complains of occurred during a lawful arrest supported by probable cause. Clearly, the officers' actions were well within the scope of employment for police officers. Sebastian has no claim for negligent retention or supervision. Thus, Count 16 is dismissed.

IV.   **CONCLUSION**

Based on the foregoing, it is

**ORDERED AND ADJUDGED** as follows:

- Officer Grossman and Officer Crocker's motion to dismiss is **GRANTED**. All claims against Officers Grossman and Crocker are **DISMISSED** with prejudice.

- The City and Chief Llanes' motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Count 15 is **DISMISSED** without prejudice, with leave to refile in state court. Count 16 is **DISMISSED** with prejudice. Counts 8 and 9 remain.

- Lieutenant Ortiz's motion to dismiss is **GRANTED IN PART** and **DENIED IN PART**. Counts 1, 2, 3, 5, 6, 10, 11 and 14 are **DISMISSED** with prejudice. Counts 12 and 13 are **DISMISSED** without prejudice, with leave to refile in state court. Counts 4 and 7 remain.

Thus, the remaining claims are:

- Count 4 against Lieutenant Ortiz and Officer Doe;

- Count 7 against Lieutenant Ortiz;

- Count 8 against the City; and

- Count 9 against Chief Llanes.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 29 of September 2017.

_____
FEDERICO A. MORENO
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record